IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MARVIN ONEAL SONGLIN,**

    Petitioner,

v.                                                                       Civil Action No. **3:19CV895**

**JEFFREY CRAWFORD,**

    Respondent.

## MEMORANDUM OPINION

Marvin Oneal Songlin, a federal detainee, filed this 28 U.S.C. § 2241 Petition. Songlin is currently detained awaiting deportation. Songlin contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One: | Songlin failed to receive a valid Notice To Appear ("NTA") for immigration proceedings because Songlin's NTA incorrectly stated Songlin was sentenced on February 14, 2017. (ECF No. 1-1, at 2 (citing *Pereira v. Sessions*, 138 S. Ct. 2105 (2018))). |
| Claim Two: | Songlin's "continued mandatory detention . . . without a bond hearing during [his] protracted removal proceedings," (ECF No. 1, at 6), violates his "due process right[s]." (ECF No. 1-1, at 1 (citing *Demore v. Kim*, 538 U.S. 510, 527 (2003))). |

Respondent filed a Motion for Summary Judgment. (ECF No. 4.) Songlin responded, (ECF No. 7), and filed his own Motion for Summary Judgment, (ECF No. 8). For the reasons set forth below, Respondent's Motion for Summary Judgment (ECF No. 4) will be GRANTED IN PART and DENIED IN PART. Songlin will be GRANTED limited habeas relief with respect to Claim Two.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization in the quotations to the parties' submissions.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)

(quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Respondent submits the Declaration of Joshua T. Collins, an employee of the Department of Homeland Security, Immigration, and Customs Enforcement ("ICE") and Removal Operations, ("Collins Decl.," ECF No. 5–1).

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment.

## II. Undisputed Facts

Songlin is a native and citizen of Jamaica. (Collins Decl. ¶ 5.) In 2015, Songlin was admitted to the United States as a Lawful Permanent Resident. (*Id.* ¶¶ 14, 15.)

On February 13, 2017, Songlin was convicted in the United States District Court for the District of South Carolina of conspiracy to commit mail fraud, mail fraud, and possession of marijuana with intent to distribute. (*Id.* ¶ 16.) Songlin was sentenced to 48 months of imprisonment. (*Id.*)

On March 3, 2019, Songlin was served with a NTA and thereby placed in removal proceedings. (*Id.* ¶ 17.) Songlin was charged as removeable from the United States based on the above charges. (*Id.*) Songlin was arrested by ICE on April 16, 2019, and has remained in detention since that date. (*Id.* ¶ 18.)

On May 14, 2019, Songlin appeared via televideo for his first hearing before the Arlington Immigration Court. (*Id.* ¶ 19.) "ICE filed evidence of [Songlin's] criminal convictions and orally moved to amend the Notice of Appear to change the date of conviction from 'February 14, 2017' to 'February 13, 2017.' The motion to amend was granted." (*Id.*)

On June 13, 2019, Songlin, represented by counsel, appeared for his second master

calendar hearing. (*Id.* ¶ 20.) The matter was continued on Songlin's request for additional time to prepare. (*Id.*) On July 11, 2019, the matter was again continued based on another request by Songlin for additional time to prepare. (*Id.* ¶ 21.)

On July 30, 2019, Songlin, by counsel, filed a Form I-589, Application for Asylum and Withholding and Removal. (*Id.* ¶ 22.) Songlin also requested a deferral of removal under the Convention Against Torture ("CAT"). (*Id.*)

On August 30, 2019, the Immigration Court conducted a merits hearing on Songlin's previously filed application for asylum and deferral of removal based on CAT. (*Id.* ¶ 23.) The Immigration Court denied Songlin's application for asylum and deferral of removal. (*Id.* ¶ 24.) Songlin appealed that decision and as of the time the Motion for Summary Judgment was filed, the appeal remains pending before the Board of Immigration Appeal. (*Id.* ¶¶ 25, 27.) "A post order custody review of [Songlin's] detention has not been done because the order of removal is not administratively final while the appeal remains pending with the Board." (*Id.* ¶ 28.)

### III. Claim One

Citing *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Songlin suggests that the Immigration Court lacks jurisdiction because his NTA incorrectly stated that he was sentenced on February 14, 2017. As explained below, this clerical error fails to provide a basis for federal habeas relief.

The Attorney General may cancel a removal order and grant noncitizens the ability

> to remain in the United States if they meet certain eligibility requirements under 8 U.S.C. § 1229b(b)(1). One of those requirements is that the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." *Id.* § 1229b(b)(1)(A). Under the "stop-time" rule set forth in § 1229b(d)(1), the accrual period of continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." A "notice to appear," as defined [] in § 1229(a)(1), specifies that the noncitizen be provided with written notice of several different categories of information, described in subsections (A)-(G) of that

> statutory provision. One of those categories is "[t]he time and place at which the [removal] proceedings will be held." *Id.* § 1229(a)(1)(G).

*Garcia-Romo v. Barr*, 940 F.3d 192, 196 (6th Cir. 2019) (alterations in original). "[I]n *Pereira* [the Supreme Court] addressed a 'narrow question' of whether a notice to appear that omits the time or place of the initial hearing triggers the statutory stop-time rule for cancellation of removal." *Pierre-Paul v. Barr*, 930 F.3d 684, 689 (5th Cir. 2019) (quoting *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018)), *cert. denied*, 206 L. Ed. 2d 854 (2020). Looking to the intersection of the statutory provisions quoted above, "the Supreme Court held that '[a] putative notice to appear that fails to designate the specific time or place . . . is not a 'notice to appear under [8 U.S.C. §] 1229(a).'" *Id.* (alteration in original) (quoting *Pereira*, 138 S. Ct. at 2110, 2113–14).

Songlin seeks to extend *Pereira*'s narrow holding beyond the stop-time rule context to suggest that his NTA was "invalid" and the Immigration Court "does not have jurisdiction to order [his] removal" because there was a clerical error with respect to the date of criminal sentence. (ECF No. 1–1, at 2.) Initially, the Court notes that

> *Pereira* was not in any way concerned with the Immigration Court's jurisdiction. Rather, the Court considered what information a notice to appear must contain to trigger the stop-time rule, which determines whether a noncitizen has been continuously present in the United States long enough to be eligible for cancellation of removal.

*Karingithi v. Whitaker*, 913 F.3d 1158, 1159 (9th Cir. 2019) (citing *Pereira*, 138 S. Ct. at 2110), *cert. denied sub nom. Karingithi v. Barr*, 140 S. Ct. 1106 (2020)).

Moreover, the United States Court of Appeals for the Fourth Circuit has concluded that a purported defect in a NTA, such as "the failure of the notice to appear filed with the immigration court to include a date and time for [a] removal hearing — does not implicate the immigration court's adjudicatory authority or 'jurisdiction.'" *United States v. Cortez*, 930 F.3d 350, 358 (4th Cir. 2019); *see U.S.A. v. Medina*, No. CR 18–653–GW, 2019 WL 4462701, at *7 (C.D. Cal.

Sept. 4, 2019) (observing that "subject matter jurisdiction is not destroyed by the failure to include particular information within a charging document itself." (citing *Cortez*, 930 F.3d at 350; *Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019); *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019))). Further, the pertinent regulations do not require the NTA to contain the specific date on which the detainee was sentenced for any particular violation of the law. *See* 8 C.F.R. 1003.15(a)–(d). Given these circumstances, Songlin fails to demonstrate that the minor clerical error in his original NTA provides him any basis for federal habeas relief. Accordingly, Claim One will be DISMISSED.

### IV. Claim Two

#### A.   The Statutory Scheme

Under 8 U.S.C. § 1226(c), "'[t]he Attorney General shall take into custody any alien' who is inadmissible or deportable on the basis of enumerated categories of crimes and terrorist activities. 8 U.S.C. § 1226(c)(1). By its terms, § 1226(c) does not entitle detainees to a bond hearing." *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018). For non-citizens detained pursuant to § 1226(c), "[r]elease is authorized 'only if the Attorney General decides . . . that release of the alien from custody is necessary' for witness-protection purposes 'and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.'" *Id.* (quoting 8 U.S.C. § 1226(c)(2)).

Respondent contends, and Songlin does not dispute, that Songlin's crime of conspiracy to commit wire fraud is an aggravated felony that warrants detention without a bond hearing under § 1226(c). (ECF No. 5, at 17 (citing, *inter alia*, *Sodhi v. Choate*, No. 19–CV–00974–NRN, 2019 WL 3317293, at *4 (D. Colo. July 24, 2019)). Nor does Songlin suggest that he is entitled to release for witness protection purposes. Rather, Songlin contends that his "continued mandatory

6

detention . . . without a bond hearing during [his] protracted removal proceedings," (ECF No. 1, at 6), violates his "due process right[s]," (ECF No. 1-1, at 1 (citing *Demore v. Kim*, 538 U.S. 510, 527 (2003)). Essentially, Songlin contends that despite the statutory text of § 1226(c) which mandates his detention, the Due Process Clause prohibits his prolonged detention without an individualized bond hearing to assess whether he is a flight risk or a danger to the community. Evaluation of this claim requires a preliminary review of the pertinent Supreme Court decisions regarding the detention of noncitizens pending their potential removal from the United States.[2]

### B. Applicable Supreme Court Decisions

#### 1. *Zadvydas v. Davis*, 533 U.S. 678 (2001)

In *Zadvydas*, the Supreme Court addressed 8 U.S.C. § 1231(a)(6), which authorizes the detention of aliens who have been ordered removed from the United States.

> Under this section, when an alien is ordered removed, the Attorney General is directed to complete removal within a period of 90 days, 8 U.S.C. § 1231(a)(1)(A), and the alien must be detained during that period, § 1231(a)(2). After that time elapses, however, § 1231(a)(6) provides only that certain aliens "*may* be detained" while efforts to complete removal continue. (Emphasis added).

*Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018). The *Zadvydas* Court was tasked with "decid[ing] whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period reasonably necessary to secure the alien's removal." *Zadvydas*, 533 U.S. at 682.

> The Supreme Court
>
> construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," 533 U.S., at 699, and it further held that six months is a presumptively reasonable period, *id.* at 701. After that, the Court concluded, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably

---

[2] The Court omits any parallel citations with respect to Supreme Court cases, including quotations from lower courts citing the Supreme Court.

> foreseeable future," the Government must either rebut that showing or release the alien. *Ibid.*
>
> The *Zadvydas* Court justified this interpretation by invoking the constitutional-avoidance canon, and the Court defended its resort to that canon on the ground that § 1231(a)(6) is ambiguous. Specifically, the Court detected ambiguity in the statutory phrase "*may* be detained." "'[M]ay,'" the Court said, "suggests discretion" but not necessarily "unlimited discretion. In that respect the word 'may' is ambiguous." *Id.* at 697. The Court also pointed to the absence of any explicit statutory limit on the length of permissible detention following the entry of an order of removal. *Ibid.*

*Jennings*, 138 S. Ct. at 843.

In reaching that conclusion, the Supreme Court observed that "government detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (citation omitted). Although the government had argued that the detention provision was intended to ensure the appearance of aliens at future immigration proceedings and prevent the community from being endangered, the Court concluded that neither of these rationales was "sufficiently strong" to justify "indefinite civil detention." *Id.* "[T]he Court determined that the first rationale was 'weak or nonexistent' in cases that stretched far beyond the removal period where 'removal seems a remote possibility at best' and that the second rationale has only been allowed to justify preventive detention 'when limited to especially dangerous individuals and subject to strong procedural protections.'" *Portillo v. Hott*, 322 F. Supp. 3d 698, 703 (E.D. Va. 2018) (quoting *Zadvydas*, 533 U.S. 690–91). The Supreme Court concluded that faced with an alien who is detained following a final order of removal after the 90-day removal period a

> habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's

8

> presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699–700.

### 2. *Demore v. Kim*, 538 U.S. 510 (2003)

In *Demore*, the Supreme Court rejected a *facial* challenge to 8 U.S.C. § 1226(c)'s requirement of detention without a bond hearing for certain criminal non-citizens during the pendency of their removal proceedings. *Id.* at 531. This rejection largely was driven by the Supreme Court's understanding that detention of criminal non-citizens pending the completion of their removal proceeding would last only for a "very limited time." *Id.* at 529 n.12. Specifically, in reliance upon the government's representations,

> the Court explained that detention "under § 1226(c) lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.
>
> In his concurrence, Justice Kennedy extended the majority's logic to as-applied challenges. He noted that due process bars the Government from depriving people of liberty arbitrarily. *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). So once "continued detention be[comes] unreasonable or unjustified," he reasoned, "a lawful permanent resident alien" could be "entitled to an individualized determination as to his risk of flight and dangerousness." *Id.* Because he read the majority's discussion of the facial challenge as consistent with that premise, he cast the fifth vote. *Id.* at 533.

*German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 208–09 (3d Cir. 2020) (alteration in the original).

"In August 2016, the Office of the Solicitor General notified the Supreme Court that the data relied upon in *Demore* was incorrect." *Haughton v. Crawford*, No. 1:16–cv–634 (LMB/IDD), 2016 WL 5899285, at *6 (E.D. Va. Oct. 7, 2016) (citation omitted). For example, in 2001, in those instances where the alien decides to appeal the immigration judge's decision, the non-citizen would be detained under § 1226(c) for an average of "382 days (almost 13 months) in 2001, not

the five months the Court intuited." *Id.* (citation omitted). "Research indicates that in 2012 the average amount of time an alien with a criminal conviction spent in removal proceedings (and, by extension, detention) was 455 days, five times as long the 90 days that the Court believed was sufficient to resolve a majority of cases when *Demore* was decided in 2003." *Id.* (internal citation omitted).

"Lower courts tasked with applying *Demore* to prolonged periods of detention have increasingly adopted a narrow reading of the Court's holding, emphasizing that it rested on the brevity of *Demore*'s six-month detention and the government's representations about the average time to completion." *Id.* (citing *Reid v. Donelan*, 819 F.3d 486, 493 (1st Cir. 2016)). Confronted with instances of criminal aliens held for well in excess of a year, multiple circuit courts

> concluded that Congress constitutionally can require mandatory detention during a criminal alien's removal proceedings as a general rule, but § 1226(c) may become unconstitutionally applied if a criminal alien's detention without even a bond hearing is unreasonably prolonged. In other words, § 1226(c) must contain an "implicit reasonable time limitation, the application of which is subject to federal court review." *Cf. Zadvydas*, 533 U.S. at 6825 (quotation marks omitted). Construing the statute in this fashion avoids "serious doubt[s]" about the constitutionality of indefinite detention. *See id.* at 689.

*Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1213 (11th Cir. 2016) (alteration in original), *vacated*, 890 F.3d 952 (11th Cir. 2018).

### C. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)

In *Jennings*, the Supreme Court rejected the Ninth Circuit's use of the constitutional-avoidance to construe § 1226(c) as implicitly limiting detention without a bond hearing. *Jennings*, 138 S. Ct. at 842, 846. The Court explained that "[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction. In the absence of more than one plausible construction, the canon simply has no application." *Id.* at 842 (citations omitted) (internal quotation marks

omitted). The text of "§ 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* at 846 (quoting 8 U.S.C. § 1226(c)). The courts, therefore, are not permitted, under the cannon of constitutional avoidance, to insert "an implicit 6–month time limit on the length of mandatory detention . . . . [because] that interpretation falls far short of a 'plausible statutory construction.'" *Id.*

Although the Supreme Court foreclosed reading the statutory text as guaranteeing periodic bond hearings, it reserved the aliens' constitutional claims for remand. *Jennings*, 138 S. Ct. at 851. One of those claims was that due process forbids prolonged confinement under § 1226(c) without a bond hearing." *German Santos*, 965 F.3d at 210 (citation omitted).

### D. Songlin's Continued Detention Without a Bond Hearing Is Unreasonable

In the wake of *Jennings*, judges in this Court and elsewhere have concluded that when a petitioner's detention pursuant 8 U.S.C. § 1226(c) "becomes unreasonable, the Due Process Clause demands a hearing." *Id.* (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011)); *Gutierrez v. Hott,* No. 1:20–cv–712 (LMB/IDD), 2020 WL 4323157, at *3 (E.D. Va. July 27, 2020) (Brinkema, J.); *Bah v. Barr*, 409 F. Supp. 3d 464, 473 (E.D. Va. 2019) (Ellis, J.), *appeal dismissed*, No. 19–7653, 2020 WL 2126451 (4th Cir. Jan. 22, 2020); *see Hamma v Adducci*, 946 F.3d 875, 883 (6th Cir. 2020) (White, J., concurring) (internal quotation marks and citations omitted) ("[A]lthough criminal aliens may be incarcerated pending removal, the time of incarceration is limited by constitutional considerations, and must bear a reasonable relation to removal, and that the reasonableness of the length of detention is subject to review by federal courts in habeas proceedings."). *But see Hamama v. Adducci*, 946 F.3d 875, 879 (6th Cir. 2020) ("The Supreme Court, moreover, has separately upheld detention during deportation proceedings

against constitutional challenge, allaying any constitutional concerns on that front." (citing *Demore*, 538 U.S. at 510)). "In determining whether prolonged detention without a bond hearing violates due process, 'district courts in this district have applied a five-factor balancing test.'" *Gutierrez*, 2020 WL 4323157, at *3 (quoting *Bah*, 409 F. Supp. 3d at 471 n.9).

> The five factors are: (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order.

*Bah*, 409 F. Supp. 3d at 471 n.9. "Although all five factors must be considered, on balance, the first factor is given 'significant weight' due to the Supreme Court's well-documented 'concerns about prolonged detention.'" *Urbina v. Barr*, No. 1:20–cv–325 (LMB/MSN), 2020 WL 3002344, at *5 (E.D. Va. June 4, 2020) (quoting *Bah*, 409 F. Supp. 3d at 471 n.9). As explained below, these five factors indicate that Songlin's detention for over sixteen months without an individualized bond hearing has become unreasonable.

Songlin has been in mandatory detention since April 16, 2019, a period of over sixteen months. In this regard, courts have observed that

> [a]lthough the duration inquiry does not admit of "hard and fast parameters, courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [the one-and-a-half-month average and five month maximum] thresholds cited by the Supreme Court in *Demore*." [*Haughton*, 2016 WL 5899285, at *9]. This approach also aligns with the concerns expressed in *Zadvydas* about detention in excess of six months. Moreover, at least one other court has contemplated the "outer limit of reasonableness" and determined that "a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case."

*Portillo*, 322 F. Supp. 3d at 707–08 (first alteration in original) (quoting *Sopo v. United States Atty Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018)).

Songlin's ongoing 16-month detention exceeds "the 14-month detention at issue in *Portillo*, the 15-month detention at issue in *Mauricio-Vazquez*, and the 12-month detention at issue in *Haughton*, each of which the respective court found weighed strongly in favor of the detainee's right to be afforded a bond hearing." *Gutierrez*, 2020 WL 4323157, at *4 (citing *Portillo*, 322 F. Supp. 3d at 707; *Urbina*, 2020 WL 3002344, at *6; *Mauricio-Vasquez*, 1:16cv01422 (AJT/TCB), 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017); *Haughton*, 2016 WL 5899285, at *9). Accordingly, the first factor strongly favors granting Songlin a bond hearing.

With respect to the second factor, Songlin's 16-month detention is significantly shorter than his 48-month criminal sentence. Given that Songlin's sentence is "greater than the time he has been in pre-removal detention, this factor does not support a finding of unreasonableness." *Haughton*, 2016 WL 5899285, at *9.

Dilatory tactics by the parties or adjudicators, the third factor, has minimal effect on this habeas petition. The evidence presented suggests that both parties are litigating in good faith. Songlin obtained roughly a two-and-a-half-month continuance of his removal proceeding to obtain counsel and prepare an Application for Asylum and Withholding of Removal and requested for deferral of removal under CAT.

With respect to the fourth factor, there do not appear to be any procedural or substantive legal errors that have extended the time of detention. Accordingly, this factor favors the government. *See Urbina*, 2020 WL 3002344, at *6.

With respect to the fifth factor, the record indicates that the government will likely secure a final order of removal. Songlin does not dispute that he was removable in light of his criminal convictions. Although Songlin contends that the Immigration Judge erred in denying his request for asylum based on the CAT, given the fact-based nature of that inquiry and the arguments

13

advanced by Songlin, his chances of succeeding on appeal do not appear significant. Accordingly, the fifth factor favors the government.

In summary, the first factor strongly favors Songlin, while the second, fourth, and fifth factors lean in favor of the government. Nevertheless, given the importance of the first factor and the significant time Songlin has been detained, the Court finds Songlin's due process liberty interest outweighs the "government's legitimate, nonpunitive interest in ensuring that he can be successfully deported if his [appeal] is denied." *Portillo*, 322 F. Supp. 3d at 708. This is so in part because the government's interest in guarding against Songlin's flight or danger to the community can be substantially protected even if Songlin is given an individualized bond hearing before an Immigration Judge where "the burden of proof is on the alien to 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Mauricio-Vasquez*, 2017 WL 1476349, at *5 (quoting 8 C.F.R. § 236.1(c)(8)). *But see Bah*, 409 F. Supp. 3d at 472 (concluding that "alien who receives a bond hearing bears an initial burden of production to come forward with evidence that favors release," but "the government bears the ultimate burden of persuasion" that alien should be detained); *Portillo*, 322 F. Supp. 3d at 709 ("[I]n light of the ongoing infringement of the alien's liberty interest and the strong tradition that the burden of justifying civil detention falls on the government, the balance between individual and government interests requires that the burden of justifying petitioner's continued detention falls upon the government.") (citation omitted) (internal quotation mark omitted). Accordingly, the Motion for Summary Judgment will be DENIED with respect to Claim Two. The § 2241 Petition will be GRANTED with respect to Claim Two. The government will be DIRECTED to provide Songlin with a bond hearing within thirty (30) days of the date of entry hereof.

## V. CONCLUSION

Respondent's Motion for Summary Judgment (ECF No. 4) will be GRANTED IN PART and DENIED IN PART. Claim One will be DISMISSED. The § 2241 Petition will be GRANTED IN PART with respect to Claim Two. Respondent will be DIRECTED to PROVIDE Songlin with a bond hearing within thirty (30) days of the date of entry hereof. Songlin's Motion for Summary Judgment (ECF No. 8) and Motion to Expedite (ECF No. 11) will be DENIED AS MOOT. Respondent's Motion to Dismiss (ECF No. 3) will be DENIED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 2 September 2020
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

15